UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

PENNY G. FLARIDA,

        Plaintiff,               Civil Action No. 2:16-cv-00063
                                    Chief Judge Waverly D. Crenshaw, Jr.
v.                              Magistrate Judge Anthony P. Patti

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.
_____/

**REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION
FOR JUDGMENT ON THE ADMINISTRATIVE RECORD (DE 12) and
AFFIRM THE COMMISSIONER'S DECISION**

**I.    RECOMMENDATION**: For the reasons that follow, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary

judgment (DE 12) and **AFFIRM** the decision of the Commissioner of Social

Security.

**II.    REPORT**

      Plaintiff, Penny G. Flarida, brings this action under 42 U.S.C. § 405(g) for

review of a final decision of the Commissioner of Social Security

("Commissioner") denying her applications for disability insurance (DI) and

supplemental security income (SSI) benefits.  This matter is before the United

States Magistrate Judge for a Report and Recommendation on Plaintiff's motion

for judgment on the administrative record (DE 12), Plaintiff's memorandum in support (DE 13), the Commissioner's response (DE 14), and the administrative record (DE 10).[1]

## A. Background and Administrative History

Plaintiff alleges her disability began on March 23, 2011, at the age of 46. (R. at 217.) She lists several physical conditions (back problems, heart problems, acid reflux, difficulties standing and walking, leg and foot cramping) and mental conditions (anxiety and depression) that limit her ability to work. (R. at 298.) Her applications for DI and SSI were denied initially in July 2012 and May 2013. (R. at 81-106, 139-142.) Her request for reconsideration was denied on September 6, 2013. (R. at 107-138, 143-144, 151-153.)

Plaintiff requested a hearing by an Administrative Law Judge ("ALJ"). (R. at 163-165.) ALJ Frank L. Gregori held a hearing, and, on April 24, 2015, determined that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 9-80.) On July 5, 2016, the Appeals Council denied Plaintiff's request for review. (R. at 1-8.) Thus, ALJ Gregori's decision became the Commissioner's final decision.

Plaintiff timely commenced the instant action on August 29, 2016. (DE 1.)

---

[1] Chief Judge Crenshaw referred this case to Magistrate Judge Alistair Newbern on April 24, 2017. (DE 15.) However, on January 30, 2018, pursuant to an administrative order, the case was assigned to the Undersigned in the Eastern District of Michigan.

2

### B.  Plaintiff's Medical History

The administrative record contains approximately 140 pages of medical records, of which Exhibits 1F through 13F were available to the ALJ at the time of the April 24, 2015 decision.  (R. at 32, 370-509.)  These records will be discussed in detail, as necessary, below.[2]

### C.  Hearing Testimony

Plaintiff testified at the February 3, 2015 hearing, when she was 50 years of age.  (R. at 44-71.)  As Plaintiff is expressly challenging the ALJ's credibility assessment in the instant appeal, the Court will refer to Plaintiff's testimony as necessary below.  Vocational expert (VE) Chelsea R. Brown testified at the hearing, providing answers to two comprehensive hypotheticals that differed with respect to sitting and standing.  (R. at 72-79 (emphasis added), 210-215.)

### D.  The Administrative Decision

On April 24, 2015 ALJ Gregori issued a decision.  (R. at 9-32.)  At **Step 1** of the sequential evaluation process,[3] the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 23, 2011, the alleged onset date.  (R. at 15.)  At **Step 2**, the ALJ found that Plaintiff had the following severe impairments: lumbar degenerative disc disease (DDD); osteoarthritis of the left knee; morbid

---

[2] The administrative record also contains a medication history and a summary report from Carthage Family Practice Specialists, P.C.  (R. at 283-292.)

[3] *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

obesity; depressive disorder; and panic disorder without agoraphobia. (R. at 15.)

At **Step 3**, the ALJ found that Plaintiff did not have an impairment or combination

of impairments that met or medically equaled the severity of one of the listed

impairments. (R. at 15-17.) Between **Steps 3 and 4** of the sequential process, the

ALJ evaluated Plaintiff's residual functional capacity ("RFC")[4] and determined

that Plaintiff had the RFC:

> . . . to perform light work as defined in 20 CFR 404.1567(b) and
> 416.967(b) that is limited to lifting and carrying no more than twenty
> pounds occasionally; lifting and/or carrying no more than ten pounds
> frequently; standing and/or walking for about six hours in an eight-
> hour workday; sitting for about six hours in an eight-hour workday;
> needing to alternate between sitting and standing every thirty minutes;
> pushing and/or pulling both hand controls and foot controls bilaterally
> with no limitations other than the aforementioned weight restrictions
> for lifting and carrying [*exertional limitations*]; and never climbing
> ladders, ropes, or scaffolds but occasionally engaging in all other
> postural activities, including climbing stairs and ramps, balancing,
> stooping, kneeling, crouching, and crawling [*postural limitations*].
> The claimant has no manipulative, visual, communicative, or
> environmental limitations. *Mentally*, the claimant can understand,
> remember, and carry out only simple, detailed, multi-step instructions;
> maintain adequate concentration, persistence, and pace for simple and
> detailed tasks without significant difficulty with appropriate work
> breaks; relate appropriately to the general public, peers, and
> supervisors; and adapt to infrequent changes that are gradually
> introduced in the work environment.

---

[4] The claimant's "residual functional capacity" is an assessment of the most the
claimant can do in a work setting despite his or her physical or mental limitations.
20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d
235, 239 (6th Cir. 2002).

(R. at 17-25 (emphases added).)  At **Step 4**, the ALJ determined that Plaintiff was unable to perform any past relevant work.  (R. at 25.)  At **Step 5**, considering Plaintiff's age, education, work experience, and RFC, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform.  (R. at 25-26.)  The ALJ therefore concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, from March 23, 2011 through the date of the decision.  (R. at 26.)

    **E.**    **Standard of Review**

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir.

1994)).  "Substantial evidence supports a decision if 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion' backs it up." *Biestek v. Comm'r of Soc. Sec.*, 880 F.3d 778, 783 (6th Cir. 2017) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility."  *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant."); *Richardson*, 402 U.S. at 399 ("We therefore are presented with the not uncommon situation of conflicting medical evidence.  The trier of fact has the duty to resolve that conflict.").  Furthermore, the claimant "has the ultimate burden to establish an entitlement to benefits by proving the existence of a disability."  *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

Although the substantial evidence standard is deferential, it is not trivial.  The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that

would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."); *see also Biestek*, 880 F.3d at 783 ("[A] decision supported by substantial evidence must stand, even if we might decide the question differently based on the same evidence.") (citing *Wright-Hines v. Comm'r of Soc. Sec.*, 597 F.3d 392, 395 (6th Cir. 2010)).  Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## F.    Analysis

Plaintiff contends that she cannot perform "the walking and standing requirements of light work[,]" and challenges these exertional limitations by pointing to her testimony and the opinions of Dr. Roy Johnson, Dr. Gary Turner, and Dr. Larry Turner.  (DE 13 at 5-6.)

### 1.    Opinion evidence

7

The Social Security Administration (SSA) will evaluate every medical opinion it receives. 20 C.F.R. § 404.1527(c) ("How we weigh medical opinions."). "Unless we give a treating source's medical opinion controlling weight under paragraph (c)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion[:]" (1) examining relationship; (2) treatment relationship; (3) supportability; (4) consistency; (5) specialization; and (6) other factors. *Id*. *See also* SSR 96-2p, 1996 WL 374188 (S.S.A. July 2, 1996), *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). However, while an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] your treating source's opinion," 20 C.F.R. § 416.927(c)(2), and "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight," *Friend v. Comm'r of Soc. Sec.*, No. 09-3889, 375 F. App'x 543, 550 (6th Cir. 2010) (per curiam) (internal quotation omitted), there is no *per se* rule that requires a written articulation of each of the six regulatory or "*Wilson* factors" listed in 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6). *Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010). In other words, the regulations do not require "an exhaustive factor-by-factor analysis." *Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804-05 (6th Cir. 2011) (citing § 404.1527(d)(2)).

Moreover, the failure to discuss the requisite factors may constitute harmless error: (1) if "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it;" (2) "if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion;" or (3) "where the Commissioner has met the goal of [§ 1527(c) ]–the provision of the procedural safeguard of reasons–even though she has not complied with the terms of the regulation." *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470 (6th Cir. 2006) (quoting *Wilson*, 378 F.3d at 547). *See also, Betty v. Comm'r of Soc. Sec.*, No. 15-CV-10734, 2016 WL 1105008, at *4 (E.D. Mich. Feb. 17, 2016), *report and recommendation adopted*, No. 15-CV-10734-DT, 2016 WL 1090554 (E.D. Mich. Mar. 21, 2016).

### a.      Roy Johnson, M.D. (consultative examiner)

Dr. Johnson completed consultative examinations (CEs) on June 8, 2012 and February 8, 2013. (R. at 395-397, R. at 423-425.) Each musculoskeletal review of systems listed back pain, while the latter exam also listed arthritis. (R. at 396, 424.) Each exam also noted that she walked with a limp. (R. at 396, 427.) In an addendum to the latter exam, Dr. Johnson stated: "She did not use a cane, but may benefit from such device for walking distances more than 30 feet." (R. at 427.) Among the diagnoses were low back syndrome, status post back surgery, angina (chest pain), acid reflux and anxiety, as well as cervical spine syndrome. (R. at

397, 425.)  At the initial exam, Dr. Johnson opined that Plaintiff was limited to standing and walking "for *no more than two hours* with regular breaks during an eight-hour shift[,]" and, at the latter exam, "for *no more than two to three hours* in an eight-hour shift with normal breaks."  (*Id.* (emphases added).)

The ALJ expressly cited these reports during a review of the records.  (R. at 18-19.)  Ultimately, the ALJ gave "little weight" to Dr. Johnson's "consultative examination assessments," explaining:

> . . . they are overly restrictive given his examinations findings which included no motor or sensory deficits.  Additionally, objective medical evidence does not support[] Dr. Johnson's opinion in Exhibit 7F that the claimant might benefit from a cane.  [R. at 427]  As noted above, there have been some findings of abnormal gait, but the claimant only used a cane following recovery from arthroscopic surgery on her left knee.  The claimant's ambulation subsequently improved, and she was able to stand without difficulty.  Further, no treating source prescribed the use of a cane, and in his treating source statement at Exhibit 12F, Dr. Turner noted that the claimant did not need an assistive device.  [(*See* R. at 462.)]

(R. at 24.)[5]  Thus, in discounting these opinions, it is clear that the ALJ considered the examining relationship (simultaneously recognizing the lack of a treatment relationship) and further considered the assessments' apparent internal inconsistency, as well as the assessments' consistency "with the record as a whole[.]"  20 C.F.R. §§ 404.1527(c)(1),(2),(4).

---

[5] The referenced form from Dr. Larry Turner is dated December 8, 2014.  In contrast, his August 15, 2013, progress note – purportedly *two days post knee arthroscopy* - indicate that Plaintiff "had arth[r]oscopic surgery," was "'doing better,'" and was "walking with [a] cane[.]"  (R. at 491.)

### b. Dr. Gary Turner, M.D. (state agency medical consultant)

On July 12, 2012, Dr. Turner reviewed several of Plaintiff's records from 2010-2011, as well as, it appears, Dr. Johnson's June 8, 2012 CE report. (R. at 398, 405-406.) Dr. Turner also completed a physical RFC assessment form, wherein he opined that Plaintiff had the ability to *stand and/or walk* (with normal breaks) for a total of "at least 2 hours in an 8-hour workday[.]" (R. at 400.) Yet, he also seems to have opined that Plaintiff can "*[w]alk* 4-5 hrs in 8 hr day with standard breaks." (R. at 400 (emphasis added).)

The ALJ expressly discussed this physical RFC assessment; in so doing, the ALJ *mistakenly* noted that Dr. Gary Turner limited Plaintiff "to standing and/or walking for at least six hours in an eight-hour workday . . . ." (R. at 23.) Having previously conducted a review of the record that included several pieces of objective medical evidence (*see* R. at 18-20), the ALJ gave "little weight" to Dr. Gary Turner's "[s]tate agency medical consultant[] assessment . . . [,]" because

> . . . it does not give a *specific* standing limitation and reflects postural limitations that are *inconsistent* with diagnostic imaging. Further, examination findings and subsequent State agency consultant assessments support a finding of no environmental limitations, and there is no documented evidence of adverse medication side effects that would prevent the claimant from being able to work around hazards.

(R. at 24 (emphases added).)  Thus, in discounting the weight afforded to this opinion, the ALJ recognized its source as a records-reviewing consultant, not an examining or treating physician.  20 C.F.R. § 404.1527(c)(1),(2).

A brief note about the ALJ's mistaken interpretation of Dr. Gary Turner's "stand and/or walk" limitation is in order, as Plaintiff challenges these exertional limitations in her appeal.  (DE 13 at 5-6.)  As noted above, the ALJ considered the *standing* limitation to be *non-specific*.  *See*, *e.g.*, 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion.  The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion.").  If the ALJ rejected Dr. Gary Turner's standing limitation as *non-specific*, it renders harmless any mistake the ALJ made in too broadly interpreting this limitation.  Moreover, Dr. Gary Turner's walking limitation does not wildly differ from the RFC's standing and/or walking limitation, as Dr. Turner found that Plaintiff could walk "4-5 hours in [an] 8 hour day with standard breaks."  (*Compare* R. at 17, R. at 400.)  Finally, as detailed immediately below, two other doctors found that Plaintiff could stand

and/or walk for about 6 hours in an 8 hour workday; thus, the ALJ had other corroborative sources upon whom to rely.[6]

### c. Dr. Marvin Bittinger, M.D. and Dr. Frank Pennington, M.D. (state agency medical consultants)

On May 7, 2013, Dr. Bittinger, M.D., opined that Plaintiff had exertional limitations consistent with light work, including an ability to stand and/or walk for a total of "[a]bout 6 hours in an 8-hour workday[,]" and an ability to sit for a total of "[a]bout 6 hours in an 8-hour workday[,]" each to include normal breaks. (R. at 90-92, 101-103.) On September 2, 2013, Dr. Pennington assessed the same exertional limitations. (R. at 115-116, 120, 130-131, 135.)

Having already recognized them as "non-examining State agency medical consultants," the ALJ gave "significant weight" to Dr. Pennington's assessments and "some weight" to Dr. Bittinger's assessments. (R. at 23.) In so doing, and having previously conducted "[a] review of the records . . . [,]" (R. at 18-21), the ALJ interpreted the assessments as "consistent with diagnostic imaging and examination findings," but gave Dr. Pennington's postural limitations "more

---

[6] In addition, the ALJ's mistaken interpretation does not seem to be a basis for Plaintiff's appeal. Plaintiff's "statement of fact" accurately acknowledges Dr. Gary Turner's assessment that she could "stand for at least 2 hours in an 8 hour work day," and the "argument" portion of Plaintiff's brief somewhat accurately states that he "agreed she could stand or walk up to two hours a day," (DE 13 at 4, 6, R. at 400). Thus, she seems to rely on Dr. Gary Turner's opinion solely as support for the similar opinions of CE Dr. Roy Johnson (R. at 397, 425) and treating physician Dr. Larry Turner (R. at 461). (*See* DE 13 at 5-6, 9.)

weight" as supported by "lumbar and left knee imaging and documented positive straight leg raises." (*Id.*) Therefore, the ALJ's assignment of weight to these opinions took into consideration that these were provided by non-examining and non-treatment sources and further took into consideration the consistency factor. 20 C.F.R. §§ 404.1527(c)(1),(2),(4).

### d. Larry L. Turner, M.D. / Peter Alfano, M.D. (treating physician)

Plaintiff treated with Carthage Family Practice Specialists, P.C., from December 2009 to August 2011, during November and December 2012, and from June 2013 to December 2014 (R. at 283-292, 370-393, 448-450, R. at 465-509). On December 8, 2014, Dr. Turner completed a physical medical source statement (MSS) form. (R. at 460-463.) Relevant to the exertional limitations at issue in the instant appeal, Dr. Turner opined that Plaintiff could stand/walk for a total of "less than 2 hours" in an 8-hour workday. (R. at 461.)

The ALJ expressly cited multiple treatment records, beginning with some dated 2011 but significantly spanning the period of June 14, 2013 through December 8, 2014. (R. at 18-20.) Then, he considered Dr. Turner's December 8, 2014 physical MSS. (R. at 20-21, 460-463.) The ALJ found that Dr. Turner's assessment was "overly restrictive," as compared to "examination findings and diagnostic imaging." (R. at 21.) The ALJ also found that Dr. Turner "did not provide much support for his restrictive limitations[,]" explaining:

He listed only "chronic low back pain" when asked about the claimant's symptoms, and when asked about the claimant's treatment and response to treatment, including any adverse medication side effects that might have work implications, he simple wrote "unable to do any work since surgery." Dr. Turner indicated that the claimant needed to walk around during an eight hour workday, but he failed to even estimate how often or for how long. He noted that the claimant would need to take frequent unscheduled breaks but again failed to even estimate for how long.

(R. at 21.) These are consistent interpretations of Dr. Larry Turner's answers to Question Nos. 4, 7, 11(f) and 11(g)(1),(2), especially considering Question Nos. 11(f) & (g), which request quantities for how *often* Plaintiff would need to walk around, how *long* he would need to walk around, and how *long* he would have to rest before returning to work, to which Dr. Turner responded "NA" (not applicable). (R. at 461.).[7]

Ultimately, the ALJ assigned "little weight" to Dr. Larry Turner's "treating source assessment," explaining:

> . . . it is not consistent with his own examination notes and conservative treatment records. It is also overly restrictive in light of diagnostic imaging and the mainly unremarkable strength findings.

---

[7] The Court notes that Dr. Larry Turner also commented on Plaintiff's abilities to stand and/or walk in the answers to Question Nos. 11(a),(c),(d),(e), and (i), such as the above-noted opinion that Plaintiff could stand/walk for a total of "less than 2 hours" in an 8-hour workday. (R. at 461-462.) Moreover, Dr. Larry Turner's check marks in the answer to Question 11(g)(3) explain that Plaintiff's *symptoms* of "muscle weakness" and "pain / paresthesias, numbness" cause a "need for breaks." Even if these answers undermine the ALJ's criticisms of the detail in Dr. Larry Turner's physical MSS (*see* R. at 21), Plaintiff's citations to Dr. Larry Turner's records do not seem to contest the ALJ's interpretation of the MSS. (DE 13 at 3, 4, 6.)

Further, the claimant testified that she can sit for thirty minutes at a time, which is more than opined by Dr. Turner, which further indicates that his assessment is perhaps an underestimation of the claimant's functioning.

(R. at 24.)  Plaintiff did indeed testify that, "I can sit for 30 minutes.  But I can make myself to sit [sic] a little longer.  But, I have to get up, and move around, or stand for a little while."  (R. at 67.)  In light of the above, the ALJ expressly considered the examining and treatment relationship factors, as well as the opinion's consistency "with the record as a whole[.]"  20 C.F.R. § 404.1527(c)(1),(2),(4).

### e.    Recap

Plaintiff argues that the ALJ did not provide good reasons for rejecting Dr. Larry Turner's opinions.  (DE 13 at 6-9.)  In large part, this argument is based upon the opinions from state agency medical consultant Dr. Gary Turner, treating physician Dr. Larry L. Turner, and CE Dr. Roy Johnson as to Plaintiff's abilities to stand and/or walk during an eight-hour workday.  (DE 13 at 5-6, 9; *see also* R. at 400, 461, 397, 425.)  However, for the reasons stated above, I find that the ALJ's opinion gives good reasons for discounting the medical opinions at issue and that the Commissioner has met the goal of Section 404.1527(c).  *See Francis*, 414 F. App'x at 805.  I also find that the opinion "'permits the claimant and [this] reviewing court a clear understanding of the reasons for the weight given [to each] treating physician's opinion[.]'"  *Id.* (quoting *Friend*, 375 F. App'x at 550).

## 2. Credibility

Plaintiff claims that her ability to do light work "is also compromised by her severe pain, morbid obesity and fatigue." (DE 13 at 6.) Specifically, she argues that she "is disabled because of pain." (DE 13 at 9-12.)

### a. Plaintiff's February 3, 2015 testimony

At the hearing, Plaintiff asked and received permission to "stand for a while[.]" (R. at 45.) She testified that she had two back surgeries during 2011. (R. at 45-47.) Her alleged onset date – March 23, 2011 - is the date of her hand surgery, although she also testified that she was having trouble with her back right before she stopped working. (R. at 50-51, 53.) She went on medical leave when she had the back surgeries. (R. at 56.) She also has bad cramps in both legs, cramps in her feet, and problems with her hand; Plaintiff associates these issues with arthritis. (R. at 63-64, 68.) Ever since her carpal tunnel surgery, she drops things with her left hand, seemingly as the result of cramping. (R. at 68-69.)

Plaintiff testified that her normal weight when she was healthy and working full-time was about 230 pounds but also testified that she currently weighs almost 300 pounds. (R. at 57-58.) She stated that she cannot stand very long, cannot walk very far and cannot sit. (R. at 57.) Plaintiff testified that she can walk 200 feet and can sit for 30 minutes or "a little longer." (R. at 67.) When she sits for a long time or walks or stands, "it feels like [she has] got concrete blocks tied to [her] back . . .

." (R. at 64.) She did not know if she would be able to perform a job that involved lifting or carrying "no more than 10 pounds," and allowed her "to alternate between sitting and standing during the work day[.]" (R. at 65.) However, she also testified that, if she found an easy job where she could sit or stand, she would have problems with fatigue. (*Id.*)

To control her back pain, Plaintiff takes medication and/or lies down. (R. at 69-70.) During the day, she naps and has to lie down to rest her back. (R. at 65-66.) She also has pain flare-ups "at least once a week," and she eases that pain by lying down. (R. at 66.) She does not sleep well at night due to pain from sleeping on her sides for too long and/or cramping in her leg, knee and/or feet. (R. at 67-68.) She cooks for herself. (R. at 71.) When grocery shopping, she will "go in and get a few things." Her sister-in-law "will have to do the rest of it for [her][,]" because Plaintiff "can't stand in there [any] longer. If a place gets too many people in it, [she] can't breathe." (*Id.*)

Plaintiff testified that Dr. Larry Turner is her general practitioner. (R. at 58.) She has to "go see him every three months[,]" or, if necessary, she "can go sooner." (R. at 71.) Plaintiff takes prescription and over the counter medications; these have the side effect of making her "very sleepy." (R. at 60; *see also* R. at 66, 285-287, 465-466.)

### b. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) factors

In determining whether an individual is disabled, the Social Security Administration (SSA) will "consider all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(a). In Plaintiff's case, having previously considered her hearing testimony, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. (R. at 22, 20 C.F.R. § 404.1529(b)). The ALJ then evaluated the intensity, persistence and limiting effects of Plaintiff's symptoms and found that Plaintiff's statements regarding these were not entirely credible "for the reasons explained in this decision." (R. at 22-23, 20 C.F.R. § 404.1529(c).)

True, the SSA "will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements." 20 C.F.R. § 404.1529(c)(2). Instead, the regulation permits "[c]onsideration of other evidence." 20 C.F.R. §§ 404.1529(c)(3). Here, the ALJ noted that Plaintiff's medical records "d[id] not fully support the level of limitation the claimant alleges[,]" and pointed to various items, including, but not necessarily limited to:

- The June 8, 2012 and/or February 8, 2013 CE report(s) of Dr. Johnson, each of which revealed straight leg raise positive on the right

but grip of 5/5, and, at the latter exam, Plaintiff "did not have any sensory . . . deficit[,]" (R. at 395-397, R. at 423-425, 427);

- The December 5, 2012 excision of volar radial wrist mass (*see* R. at 415-417);

- Imaging, such as the April 24, 2013 lumbar spine x-rays, which revealed, among other things, "moderate degenerative changes . . . [,]" (R. at 429), and the June 15, 2013 left knee x-ray(s), which revealed "[m]ild tricompartmental left knee osteoarthritis . . . [,]" (R. at 439);

- July 18, 2013 orthopedic notes, indicating that a left knee x-ray revealed "no evidence of . . . significant degenerative changes[,]" and well-maintained joint space (R. at 501);

- Plaintiff's arthroscopic surgery, which allegedly occurred on August 13, 2013 (*see* R. at 491);

- Dr. Larry Turner's May 8, 2014 progress notes (R. at 476-478), reflecting that Plaintiff was "able to stand without difficulty[,]" (R. at 477), although Plaintiff had reported having difficulty with standing at that visit and in previous months (R. at 476, 479, 485; *see also* R. at 493, 505).

(R. at 19, 22-23.)

In Plaintiff's opinion, the ALJ declared that Plaintiff's subjective complaints were not verified or verifiable by "the objective medical record[,]" despite "the apparent lack of evidence controverting [P]laintiff's report of a minimal level of daily activity[.]" (DE 13 at 11-12.) However, the ALJ here did not, as Plaintiff suggests, decide this issue "solely because the available objective medical evidence" did not substantiate her statements. 20 C.F.R. § 404.1529(c)(2). For

example, the ALJ acknowledged Plaintiff's testimony that her medications "make her sleepy," but found that this testimony was not corroborated by her treatment records, presumably her December 8, 2014 report to Dr. Turner that her medications were working well "without significant side effects." (R. at 23, 60, 66, 465; *see also* R. at 22.) The ALJ also noted that Plaintiff "consistently denied being fatigued[,]" which is likely a reference to Dr. Turner's August 21, 2014 and December 8, 2014 notes and the August 1, 2013 notes of Nancy R. Barrett, M.D. (R. at 23, 466, 472, 495.) Moreover, the ALJ's "review of the records," (R. at 18-21), should put to rest any question as to whether the ALJ considered Plaintiff's "frequent trips to the doctor over a period of many years[.]" (DE 13 at 12.) Indeed, within the opinion evidence discussion, the ALJ credited Plaintiff's testimony that she "is able to sit for thirty minutes at a time . . . [,]" and, accordingly, assessed a "need to alternate between sitting and standing every thirty minutes." (R. at 17, 23-24, 67.) This also takes into account her declaration that she needs "to get up, and move around, or stand for a little while." (R. at 67.)

### c. Recap

The ALJ's "assessment of credibility is entitled to great weight and deference, since he [or she] had the opportunity to observe the witness's demeanor." *Infantado v. Astrue,* 263 F. App'x 469, 475 (6th Cir. 2008). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of

witnesses, including that of the claimant." *Rogers*, 486 F.3d at 247. It is for this reason that the ALJ's credibility findings have at times been characterized as "unchallengable." *Payne v. Comm'r Soc. Sec.,* 402 F.App'x 109, 113-114 (6th Cir. 2010); *see, Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) ("A circuit court . . . may not review a determination of credibility. It is for the Secretary and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony.") (alteration omitted).

As the Sixth Circuit has instructed, the Court is "limited to evaluating whether or not the ALJ's explanations for partially discrediting [Plaintiff] are reasonable and supported by substantial evidence in the record." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003). Plaintiff contends that the ALJ erroneously assessed her credibility and "failed to offer a reasoned basis for the rejection of her subjective complaints of pain[,]" and further contends that ALJ Gregori's explanations for "partially discounting" the credibility of her subjective complaints "are not reasonable." (DE 13 at 9. 11.) For the reasons set forth above, the Court should disagree. The ALJ's explanation for partially discrediting Plaintiff's descriptions as to intensity, persistence and limiting effects are "reasonable and supported by substantial evidence in the record." *Jones*, 336 F.3d at 476.

### G. Conclusion

Accordingly, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (DE 12) and **AFFIRM** the decision of the Commissioner of Social Security.

## III. PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.* Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR

72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.* If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: March 15, 2018

s/Anthony P. Patti
ANTHONY P. PATTI
UNITED STATES MAGISTRATE JUDGE
SITTING BY SPECIAL DESIGNATION